UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 13-80254-CIV-RYSKAMP/HOPKINS

AFFORDABLE AERIAL PHOTOGRAPHY, INC.,

    Plaintiff,

v.

MICHAEL NICKLAUS and
GOLDEN BEAR REALTY LLC,

    Defendants.
_____/

### ORDER GRANTING MOTION FOR PRELIMINARY INJUNCTION

THIS CAUSE comes before the Court pursuant to Plaintiff Affordable Aerial Photography, Inc.'s ("AAP") motion for preliminary injunction, filed August 26, 2013 **[DE 31]**. Defendants Golden Bear Realty LLC ("Golden Bear") and Michael Nicklaus ("Nicklaus") responded on September 16, 2013 **[DE 47]**.  AAP replied on September 30, 2013 **[DE 51]**.  This motion is ripe for adjudication.

### I.    BACKGROUND

AAP provides high-end real estate photography services to real estate brokers and agents in Palm Beach County and throughout South Florida.  AAP employs respected and sought-after real estate photographer Robert Stevens ("Stevens").  AAP provides photo shoots to a client's specifications and sells images online at its website, www.stockimagedepot.com.

The photographs of homes that AAP takes for real estate agents are licensed to the agent pursuant to a written license.  (DE 12, para. 18.)  The license is granted only to the agent for whom the photos were taken.  (DE 12, para. 18.)  AAP's stock photos on its website are licensed

2

only to the individuals or businesses who purchased the photographs pursuant to the website's "Terms of Use" and "End User License Agreement." (DE 12, para. 19.)

Golden Bear is a local real estate brokerage that is owned and operated by Nicklaus. In August of 2012, Stevens discovered that Golden Bear had copied 19 of his photographs and displayed them, without authorization, in real estate listings and on its website at www.goldenbearhomes.com. (Stevens Decl., DE 32, para. 10-11.) Stevens contacted Golden Bear and requested they cease and desist from infringing the works. Golden Bear initially refused, but then removed some of the photographs from its website. (DE 12, para. 25; DE 32, para.12.) Golden Bear failed to take down AAP's photos from its real estate listings. (DE 32, para. 13-17.)

Stevens contacted the local multiple listing service ("MLS") where Golden Bear had posted its listings with AAP's photos. The MLS contacted Golden Bear and demanded the removal of the photographs. Thereafter, Stevens discovered more of his photographs used in a Golden Bear MLS listing without his permission. He again contacted the MLS, which requested that Golden Bear remove the photographs.

AAP filed this action on March 13, 2013, alleging copyright infringement in violation of 17 U.S.C. § 501 and removal of copyright management information violation of 17 U.S.C. § 1202(b). Subsequent to the initiation of this lawsuit, counsel for Golden Bear and Nicklaus assured AAP that all infringement had stopped. These assurances have proven false.

Beginning on April 3, 2013, Nicklaus posted one of AAP's photographs on the Golden Bear Facebook page. (DE 32, para.14.) Then he posted that same photo on April 5th and again on April 8th. On April 9, 2013, Nicklaus posted another of AAP's photographs on Facebook. *Id*.

Nicklaus then posted a different AAP photo on Facebook on April 13, 2013, and another on May 8, 2013. *Id*. Thereafter, Nicklaus posted three more of AAP's photos to Facebook on the 10th, 12th and 17th of June and one on August 12th. *Id*.

AAP's photographs were also discovered displayed on AAP's website without its permission after the complaint in this case was filed. (DE 32, para. 13.) In addition, on July 3, 2013, Stevens discovered a YouTube video displayed on Golden Bear's YouTube.com channel that copied three of AAP's photographs without its permission. (DE 32, para. 15.)

Finally, on July 14, 2013, Stevens discovered 21 of AAP's photographs being used to market Golden Bear's listing for the property at 131 Terrapin Trail, Jupiter, and Golden Bear has continued to display one of AAP's photographs in its listing for 151 Sota Drive, Jupiter. (DE 32, para. 17.) AAP requests that a preliminary injunction be entered against Golden Bear and Nicklaus enjoining and restraining Golden Bear and Nicklaus and all persons acting in concert with them from any and all infringement of Plaintiff's copyrights.

## II.    LEGAL STANDARD

The owner of a copyright may move for a preliminary injunction to restrain infringement. Fed.R.Civ.P. Rule 65; 17 U.S.C. § 502. A party seeking a preliminary injunction must demonstrate (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury; (3) that the threatened injury to the plaintiff outweighs the potential harm to the defendant; and (4) that the injunction is in the public interest. *See Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *Suntrust Bank v. Houghton Mifflin Co.*, 268 F.3d 1257, 1265 (11th Cir. 2001).

### III.   DISCUSSION

**A.   AAP has a substantial likelihood of success on the merits.**

The Supreme Court has set forth a two-prong test for a claim of copyright infringement. To prevail, a plaintiff must prove: (1) ownership of a valid copyright, and (2) unauthorized copying. *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991).

To satisfy the "ownership" prong, the "plaintiff must prove that the work as a whole is original and that the plaintiff complied with applicable statutory formalities." *See MiTek Holdings, Inc.*, 89 F.3d 1548, 1553-54 (11th Cir. 1996)(quotation omitted).  A certificate of registration issued before or within five years after first publication of the work constitutes *prima facie* evidence of the validity of the copyright and the facts stated in the certificate. *See* 17 U.S.C. § 410(c).  AAP has produced registration numbers for 19 of the works at issue that establish *prima facie* that the works are original and owned by AAP.  (DE 32, Ex. A.)  "Once the plaintiff produces a certificate of copyright, the burden shifts to the defendant to demonstrate why the claim of copyright is invalid." *Bateman v. Mnemonics*, *Inc.*, 79 F.3d 1531, 1541 (11th Cir. 1996) (citation omitted).  Defendants have not contested the validity of the claims of copyright.

AAP also has a number of infringed works for which registration is pending.  AAP has applied to register these works and is awaiting the issuance of registration certificates.  For those works not yet registered, Stevens attests to their validity and AAP's ownership, as Stevens affirms in his declaration that he took the photographs while employed by AAP.  (DE 32, para.4.)  The copyrights in the photographs are the property of AAP since they were made by Stevens, its

employee. *See Community for Creative Non-Violence v. Reid*, 490 U.S. 730, 753 (1989).

While it is true that registration is generally a jurisdictional prerequisite to a suit for copyright infringement, 17 U.S.C. § 411, section 411 does not limit the remedies a court can grant. *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1154 n.1 (9th Cir. 2007) ("Once a court has jurisdiction over an action for copyright infringement under section 411, the court may grant injunctive relief to restrain infringement of any copyright, whether registered or unregistered.").

The second prong of the copyright infringement analylsis is satisfied via the Stevens declaration and the attached exhibits, which show the copying by Golden Bear and Nicklaus.

Defendants argue that AAP is not likely to succeed on the merits because (a) Defendants have an implied license to use the photographs and (b) the infringing photographs continue to repeatedly appear on the Golden Bear website and Facebook page for reasons outside of Golden Bear's control.  The Court will address each of these arguments individually.

Golden Bear contends that it has an implied license because its co-listing agent "paid for the photographs to use for listings." (DE 49, pages 5-6.)  Golden Bear argues about the "scope" of that implied license between AAP and Loxahatchee Club Realty, a third party, and then tries to bootstrap itself into the position of the third party.  The contemporaneous documents from 2011 when AAP took the photographs demonstrate that the photographs remained the sole property of AAP, explaining that "[a]ll photographs remain sole property of A.A.P. Inc.  It is illegal to sell or take photographs from the public domain without A.A.P.'s permission (i.e., M.L.S.)." (DE 48-1, Ex. A.)  This language contradicts Defendants' position that someone, somehow, was not only the recipient of an implied license, but was authorized and entitled to

convey certain rights to Golden Bear itself and that Golden Bear could then use the photographs in various ways, including on its Facebook page.  Golden Bear's reliance on *Lizette Dawes-Ordonez v. Realtor Association of Greater Fort Lauderdale, Inc.*, Case No. 09-60335-CIV-COHN/SELTZER, 2010 U.S. Dist. Lexis 44160, at *2 (S.D. Fla. May 5, 2010) for the proposition that the MLS had an implied license in AAP's photographs, is misplaced, as there is no evidence that the photographer in that case expressly reserved ownership of the photographs.  Yet here, AAP expressly retained ownership of the photographs as evidenced by Golden Bear's own exhibit.  AAP is likely to prevail on the theory of implied license.

Golden Bear alleges that the website and Facebook postings are obtained "at random" from MLS listings.[1]  AAP's computer forensics expert explains that the infringing photographs are stored on Golden Bear's servers (called CDN servers).  (DE 52, para. 7.)  Golden Bear's website (or Facebook page) specifically requests photographs from its own servers and then displays those photographs on the website and Facebook page.  (DE 52, para. 10.)  The photographs are not pulled from the MLS and not at random.  AAP is likely to succeed on the merits of its infringement claims.

B.     **A substantial threat of irreparable injury to AAP exists.**

"Under the Copyright Act, . . . a plaintiff need not show irreparable harm in order to obtain a permanent injunction, so long as there is past infringement and a likelihood of future infringement." *CBS Broad., Inc. v. EchoStar Communs. Corp.*, 450 F.3d 505, 518 n.25 (11th Cir. 2006).  AAP has shown clear evidence of past and threatened future infringement.  Despite

---

[1] It defies logic that a real estate brokerage would want random pictures on its website or Facebook page.

their assurances that they would stop infringing AAP's works, Nicklaus' and Golden Bear's unauthorized copying continues unabated. AAP should not have to continuously police Golden Bear's online presence.

In any event, Defendants' appropriation of AAP's works creates irreparable harm. Each and every new or continued infringement violates AAP's exclusive rights to: (a) reproduce the copyrighted work in copies, and (b) display the work publicly. *See* 17 U.S.C. § 106(1) and (3). History shows that Golden Bear and Nicklaus will continue to reproduce and display AAP's works unless enjoined since they have continued to do so even after this case was filed. Furthermore, irreparable harm is shown by the damages AAP has suffered in lost revenue from past infringements. AAP has not been paid for its work by Golden Bear or Nicklaus. Golden Bear and Nicklaus have not purchased licenses for several of the works that are available to anyone on AAP's stock image photo site. This showing of past and future infringements, as well as loss of business and inhibition of exclusive rights associated with the Copyright Act, satisfies the irreparable injury requirement.

C.   **The threatened injury to AAP outweighs the potential harm to the Defendant.**

Copyright law dictates that the harm an injunction might have on a defendant's business merits little equitable consideration and is insufficient to outweigh the continued wrongful infringement of asserted legal rights. *See Concrete Machinery Company v. Classic Lawn Ornaments, Inc.*, 843 F.2d 600, 612 (1st Cir. 1988)("It would be incongruous to hold that the more an enterprise relies on copyright infringement for survival, the more likely it will be able to defeat the copyright owner's efforts to have that activity immediately halted). Even proof of a

8

"devastating effect" on the putative infringer's business will not be enough to overcome a motion for preliminary injunction because "then a knowing infringer would be permitted to construct its business around its infringement, a result we cannot condone." *Apple Computer, Inc. v. Franklin Computer Corp.*, 714 F.2d 1240, 1255 (3d Cir. 1983). Denial of a preliminary injunction on the basis of harm to the defendant rewards a defendant for violating the law.

Barring Defendants from using the copyrighted material is "a loss which [an infringing defendant] may justifiably be called upon to bear." *Corning Glass Works v. Jeannette Glass Co.*, 308 F.Supp. 1321, 1328 (S.D.N.Y. 1970). Defendants have no legitimate interest that weighs against the entry of a preliminary injunction. If this Court were to deny AAP's motion for preliminary injunction, AAP would be harmed, for all the reasons discussed in the irreparable harm analysis.

**D.     The requested injunction will not disserve the public interest.**

The issue of public policy is rarely a genuine issue if the copyright owner has established a likelihood of success:

> Since Congress has elected to grant certain exclusive rights to the owner of a copyright, it is virtually axiomatic that the public interest can only be served by upholding copyright protections and, correspondingly, preventing the misappropriation of the skills, creative energies, and resources which are invested in the protected work.

*Apple Computer*, 714 F.2d at 1255 (citation omitted). Congress expressly provides for preliminary injunctions in the Copyright Act. *See* 17 U.S.C. § 502(a).

The public interest will be served by the entry of an injunction in this case. "[O]nce the

plaintiff in a copyright infringement action has established a likelihood of success on the merits, there is seldom any question of whether the entry of an injunction will serve the public interest." *Ga. Television Co. d/b/a WSB-TV v. News Clips of Atlanta, Inc.*, 718 F. Supp. 939, 950 (N.D. Ga. 1989).

E.   **Posting of a Bond**

District Court Judges have broad discretion over whether to require the posting of a bond by the party moving for the injunction.  *See Popular Bank of Fla. v. Banco Popular de Puerto Rico,* 180 F.R.D. 461, 463 (S.D. Fla. 1998).  Defendants shall post a bond within ten days of the date of this order  in the amount of $5,000.00, made payable to the Clerk of Court.

## IV.   CONCLUSION

THE COURT, being fully advised and having considered the pertinent portions of the record, hereby

ORDERS AND ADJUDGES that the motion for preliminary injunction, filed August 26, 2013 **[DE 31]**, is GRANTED.  Golden Bear and Nicklaus and all persons acting in concert with them are hereby enjoined and restrained from any and all infringement of Plaintiff's copyrights.

DONE AND ORDERED at Chambers in West Palm Beach, Florida, this 8th day of October, 2013.

S/Kenneth L. Ryskamp  
KENNETH L. RYSKAMP  
UNITED STATES DISTRICT JUDGE